No. 25-30463

---

# In the United States Court of Appeals
# For the Fifth Circuit

---

Dawn Simmons; Ray Simmons; Bethany Darby, Individually & on Behalf of her Minor Child, MD; Bernard Darby, Jr., Individually & on Behalf of his minor child, M D,
*Plaintiffs - Appellants*

v.

Brotherhood Mutual Insurance Company,
*Defendant - Appellee*

———————————————————

Bethany Darby, Individually & on Behalf of Her Minor Child, M D; Bernard Darby, Jr. Individually & on Behalf of His Minor Child, M D,
*Plaintiffs - Appellants*

v.

Brotherhood Mutual Insurance Company,
*Defendant - Appellee*

---

On Appeal from the United States District Court
for the Western District of Louisiana
6:23-CV-58

---

**BRIEF OF APPELLANTS BERNARD DARBY, BETHANY DARBY, DAWN SIMMONS, AND RAY SIMMONS**

---

Respectfully Submitted,

**LABORDE EARLES LAW FIRM, LLC**


/s/ David Charles Laborde
**DAVID C. LABORDE (Bar #20907)**
*Email: service@onmyside.com*
**DERRICK G. EARLES (Bar #29570)**
**MARY K. CRYAR (Bar #24062)**
1901 Kaliste Saloom Road
Lafayette, Louisiana 70508
Phone (337) 261-2617
Fax (337) 261-1934
*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Brotherhood Mutual Insurance Company | Marta Schnabel, Kevin O'Bryon, and McKenna Giovingo of O'Bryon & Schnabel, A.P.L.C. in New Orleans, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Ray Simmons, Dawn Simmons, Behtany Darby, Bernard Darby, Jr., Marissa Darby | David C. Laborde, Derrick G. Earles, and Mary K. Cryar of Laborde Earles Law Firm, LLC in Lafayette, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| GEICO General Insurance Co.; George Severson (Succession Representative obo John Lundy Estate) | Steven M. Mauterer, Nicholas P. Arnold, and George F. Severson. |

/s/ *David. Charles Laborde*
David Charles Laborde
Attorney of record for Plaintiffs-Appellants

iii

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants, Ray Simmons and Dawn Simmons, Individually and as Surviving Mother and Father of their Deceased Children, Lindy Simmons, Christopher Simmons, and Kamryn Simmons; and Plaintiffs-Appellants, Bethany Darby and Bernard Darby, Jr., Individually and On Behalf Of their Minor Child, Marissa Darby, request oral argument as they believe it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

Contents                                                                                        Page(s)

CERTIFICATE OF INTERESTED PERSONS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ..................................................................................... v

TABLE OF AUTHORITIES ............................................................................... vi

JURISDICTIONAL STATEMENT ...................................................................... 1

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE .............................................................................. 1

SUMMARY OF THE ARGUMENT ..................................................................... 3

ARGUMENT ...................................................................................................... 4

CONCLUSION .................................................................................................. 26

CERTIFICATE OF SERVICE ........................................................................... 28

CERTIFICATE OF COMPLIANCE .................................................................. 29

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………**Pages(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (La.1986)…..............5

*Basil v. Dow Chemical Co.*, 2020 WL 1964155, p. 4 (M.D. La. 2020)
(unreported case)………………………………………………………………..25

*Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995…………………….........7,8

*Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577…...5,6,12,13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)…………………..5

*Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511 (5th Cir. 2005)……………..5

*Doerr v. Mobil Oil Corp.*, 00-947 (La. 12/19/00)………….……..…….………6

*Fidelity & Cas. Co. Of New York v. Callicott*, 88 So.2d 724
(La.App. 5 Cir. 1956)………………………………………………………....11

*Garcia v. Saint Bernard Parish Sch. Bd.*, 576 So.2d 975 (La.1991)………..……..…6

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991)………………...16

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)………………...17

*Klumpp v. Ochsner Clinic Foundation*, 410 So.3d 315 (5th Cir. 2004)…………….4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
106 S.Ct. 1348 (1986)………………………………………………………....5

*Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F.Supp.3d 602
(E.D. La. 2015)……………………………………………………………20

*Nowell v. Universal Electric Co.*, 792 F.2d 1310 (5th Cir. 1986)………………..24,25

*Sandoz v. Bourgeois*, 10-859 (La.App. 5 Cir. 4/12/11), 64 So.3d 322,
*writ denied*, 11-973 (La. 6/17/11), 63 So.3d 1043………………………...…………13

*U.S. v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998)…………………………..……..24

*U.S. v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995)…………………………...……24

*United States v. Washington*, 106 F.3d 983, 1001-02 (D.C. Cir. 1997)………...….25

*Vallier v. Oilfield Constr. Co.*, 483 So.2d 212 (La.App. 3 Cir. 1986)…………..….6

*WH Holdings, LLC v. Ace Am. Ins. Co.*, 2013 WL 2286107 (E.D. La. 2013)….…..6

*Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422 (5th Cir. 2022)………...…5

## Federal Rules of Evidence

Federal Rule of Evidence 801……..…………………...…………………....…..21

Federal Rule of Evidence 802……………………………………...……..…….21

Federal Rule of Evidence 803……………………………………...21,22,24,25

Federal Rule of Evidence 807…………………………………………....24,25

Federal Rule of Evidence 901(b)(1)…………………………………………….20

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a)…………………………………………………...……4

## Other

Stephen E. Arthur & Robert S. Hunter III, *Federal Trial Handbook:
Civil* § 58:40 (Thomson Reuters, 2025-2026 ed., Sept. 2025 update),
available on Westlaw…………………………………………………….24,25

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292.  The District Court entered final judgment in Defendant Brotherhood's favor on July 30, 2025.[1]  Plaintiffs filed a Notice of Appeal on August 11, 2025.[2]

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in finding, as a matter of law, that ACS did not request that Dawn or Lindy Simmons drive Christoper Simmons to the game.

2. Whether the District Court erred in refusing to admit the text message from Christoper Simmons to Dawn Simmons.

## STATEMENT OF THE CASE

On December 17, 2021, an intoxicated John Lundy—who was driving on the wrong side of Interstate 49 at a high rate of speed—crashed head-on into the Simmons' vehicle, resulting in severe injuries to Dawn Simmons, the untimely deaths of Dawn's three children—Lindy, Christopher, and Kamryn Simmons[3]—and causing severe injuries to Christopher's friend—Marissa Darby[4]—who was also a passenger in the Simmons' vehicle.[5]  The senseless and tragic accident occurred

---

[1] ROA.25-30463.2006 (Order).
[2] ROA.25-30463.2007-2008 (Notice of Appeal).
[3] At the time of the crash, Christopher and Kamryn were minors and Lindy was twenty years old.
[4] At the time of the crash and when suit was filed, Marissa was a minor.  Marissa is now an adult.
[5] John Lundy passed away as a result of the crash.

when Christopher Simmons—a basketball player at Acadiana Christian School (ACS)—was returning home from a game in Monroe with his family and Marissa Darby.  ACS had requested players secure their own transportation instead of using a school bus.[6]  ACS was insured by Brotherhood Mutual Insurance Company under a commercial policy with a nonowned vehicle coverage endorsement.[7]

Plaintiffs Ray and Dawn Simmons, and Bethany and Bernard Darby, filed Petitions for Damages against multiple defendants, including Brotherhood, as the uninsured/underinsured insurer of ACS.[8]  The suits were removed to federal court and consolidated.[9]  Brotherhood denied coverage, claiming neither Plaintiffs—nor the Simmons' vehicle—were insureds under the policy.[10]

The Simmons and Darbys filed a Motion for Partial Summary Judgment on insurance coverage (collectively "Simmons"), claiming they are insureds under the

---

[6] ROA.25-30463.307-308 (email); ROA.25-30463.913:7-25; ROA.25-30463.914:1-25; ROA.25-30463.915:1-25; ROA.25-30463.916:1-25; ROA.25-30463.917:9-23; ROA.25-30463.918:15-25; ROA.25-30463.919:1-13; ROA.25-30463.921:6-9; ROA.25-30463.317 (text message).

[7] ROA.25-30463.1004 (Brotherhood's Answer to Interrogatory No. 9); ROA.25-30463.1013 (Brotherhood's Answer to RPD No. 20); ROA.25-30463.1018 (Answer to Simmons' Petition, paras. 21-23); ROA.25-30463.402-762 (Brotherhood policy No. 17MPA058813); ROA.25-30463.413 (Brotherhood policy, Declarations, p. 11 of 16); ROA.25-30463.1034 (Answer to Darby's Petition, paras. 12-14); ROA.25-30463.792-798 (Brotherhood policy, endorsement).

[8] Marissa Darby, who was a minor at the time suit was filed, is now an adult; ROA.25-30463.995 (Simmons' Petition, paras. 21-23); ROA.25-30463.984 (Darby's Petition, paras. 12-14).

[9] ROA.25-30463.16 (Notice of Removal).

[10] ROA.25-30463.1018 (Answer to Simmons' Petition, paras. 21-23); ROA.25-30463.1004-1005 (Brotherhood's Answer to Interrogatory Nos. 9, 10, 11, 12); ROA.25-30463.1011-1014 (Brotherhood's Answer to RPD Nos. 11, 15, 16, 17, 21, 22, 23); ROA.25-30463.1034 (Answer to Darby's Petition, paras. 12-14).

policy and entitled to UM benefits.[11]  The District Court denied their motion, granted Brotherhood's Cross-Motion for Partial Summary Judgment, and declared the Simmons' other motion for summary judgment regarding La.R.S. 22:1295 moot.[12] The Simmons filed a Notice of Appeal on August 11, 2025.[13]

## SUMMARY OF THE ARGUMENT

The District Court erred in ruling that the Simmons were not insureds under the policy.  It wrongly concluded that Lindy and Dawn's vehicle use was not at ACS's "request," a requirement for coverage, thus improperly resolving a factual dispute contrary to summary judgment principles.

This error stemmed from misinterpreting an ACS email to parents, which requested parental transportation.  The email required pre-approval only for those driving additional basketball players, not their own child/basketball player.  Since the Simmons transported only their child—i.e., an ACS basketball player—pre-approval was unnecessary.[14]  This misinterpretation warrants reversing Brotherhood's summary judgment, as this issue should be decided by a jury.

Deposition testimony and evidence confirm ACS requested parental transportation, supporting the Simmons' claim.  Both ACS's principal and athletic

---

[11] ROA.25-30463.274-304.
[12] ROA.25-30463.2006 (Order); ROA.25-30463.1993-2005 (Ruling).
[13] ROA.25-30463.2007-2008 (Notice of Appeal).
[14] Marissa Darby, a family friend, was not an ACS basketball player.

director, plus Christopher's text message and Dawn's affidavit, corroborated this request. Despite this, the District Court granted summary judgment for Brotherhood, relying on conflicting testimony, improperly resolving a factual dispute meant for a jury.

Finally, the District Court erred in its hearsay ruling on Christopher's text to Dawn, which should be admissible under the present sense impression exception. The text—sent during or immediately after a meeting between basketball players, their coach, and the ACS athletic director—supports its admissibility. If not, it is admissible under the residual exception. Thus, the District Court's decision should be reversed, and the case remanded for a jury trial.

## ARGUMENT

## APPELLATE STANDARD OF REVIEW

A grant of a motion for summary judgment is subject to *de novo* review.[15]

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[16] Initially, the movant must present the basis for the motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[15] *Klumpp v. Ochsner Clinic Foundation*, 410 So.3d 315 (5th Cir. 2004).
[16] Fed. R. Civ. P. 56(a).

together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.[17]  The burden then shifts to the nonmovant to identify specific facts demonstrating a genuine issue for trial.[18]  All facts and inferences must be construed in the light most favorable to the nonmoving party.[19]  Further, in resolving the motion, the court may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes.[20]

## GOVERNING LAW

Federal courts sitting in diversity must apply the substantive law of the forum state, interpreting insurance policies according to the law where the policy was delivered.[21]  Here, Brotherhood's policy was delivered to ACS in Louisiana, so Louisiana law applies.[22]

Under Louisiana law, an insurance policy is a contract interpreted according to the Louisiana Civil Code, which requires courts to ascertain the parties' common intent.[23]  Words in a policy are construed using their plain, ordinary meaning unless

---

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[18] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).
[19] *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022).
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (La.1986).
[21] *Ticknor v. Rouse's Enters., LLC*, 2 F. Supp. 3d 882 (E.D. La. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 (1938)).
[22] ROA 25-30463.403 (Brotherhood policy No. 17MPA0508813, Declarations, p. 1 of 16).
[23] *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005)(quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003)); *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577, 580.

5

the words have acquired a technical meaning.[24]  Policies should not be interpreted

unreasonably to alter their terms or reach absurd conclusions.[25]  The insured must

prove insured status and that the claim falls within the policy's terms.[26]  The insurer

must prove any exclusionary clause applies.[27]  Exclusionary provisions are read with

the entire policy and construed strictly against the insurer, favoring coverage.[28]

## I.    The District Court erred by finding the Simmons are not insureds under the Brotherhood policy by misinterpreting an email requesting that the Simmons transport Christopher to and from the basketball game.

Brotherhood issued a multi-peril policy to the insured, ACS.[29]  The policy

contains a nonowned vehicle coverage endorsement which provides additional

coverage to an "authorized operator" of a "nonowned vehicle".[30]  In order for the

Simmons to qualify as an "authorized operator", the following three requirements

must be satisfied:  (a) the Simmons must qualify as "[a]ny other person"; (b) the

---

[24] *Cadwallader*, 848 So.2d at 580.

[25] *Cadwallader*, 848 So.2d at 580.

[26] *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La.2000); *See also WH Holdings, LLC v. Ace Am. Ins. Co.*, 2013 WL 2286107, p. 3 (E.D. La. 2013) (If a bona fide insured must prove coverage, then it follows rather easily that a party like WH Holdings with no privity to the insurer who seeks coverage as an insured on a policy bears the burden of proof on insured status.  This conclusion is buttressed by Louisiana Civil Code article 1831 which states that "[a] party who demands performance of an obligation must prove the existence of the obligation.").

[27] *Doerr*, 774 So.2d at 124.

[28] *Garcia v. Saint Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La.1991); *Vallier v. Oilfield Constr. Co.*, 483 So.2d 212, 215 (La.App. 3 Cir. 1986).

[29]  ROA.25-30463.1715 (Pl. Opp. to Def. Cross-MPSJ); ROA.25-30463.321 (Brotherhood's Answer to Pl. Interrogatory No. 9); ROA.25-30463.403 (Brotherhood policy No. 17MPA0508813, Declarations, p. 1 of 16); ROA.25-30463.1018 (Brotherhood's Answer to Pl. Pet., paras. 21-23).

[30]  ROA.25-30463.1715;  ROA.25-30463.792 (Brotherhood policy "Broad Form Nonowned Vehicle Coverage" endorsement, form GL-71B, p. 1 of 7).

Simmons' vehicle must qualify as a "nonowned vehicle"; and (c) the Simmons must be "operating or using a nonowned vehicle at the request of" ACS's leader, employee, or appointed person, and operated on ACS's behalf and for its benefit.[31] The District Court correctly determined the first two prongs were satisfied.[32]

However, the District Court *incorrectly* determined that the third prong—i.e., Lindy's "operation [or] use" of the Simmons' family car was at the "request" of ACS—had not been satisfied as a matter of law.[33]  Whether the "operation [or] use" of the Simmons' car was at the "request" of ACS is, at worst, a question of fact for the jury to determine.

With respect to Lindy's "operation [or] use" of the vehicle, it is immaterial whether Lindy—instead of a parent, Dawn—was driving.  This is because the policy defines an authorized operator as any other person "operating ***or using***" a nonowned vehicle.[34]  While the term "using" is not defined in the policy, it is clear that "use" of a vehicle is not limited to "operating"—i.e., driving—said vehicle and unquestionably includes the act of a passenger riding in said vehicle.[35]  Thus ***Dawn's***

---

[31]  ROA.25-30463.792 (Brotherhood policy "Broad Form Nonowned Vehicle Coverage" endorsement, form GL-71B, p. 1 of 7).

[32] ROA.25-30463.2000 (Ruling).

[33] ROA.25-30463.2000 (Ruling).

[34] ROA.25-30463.792 (Brotherhood Policy 17MPA0508813, nonowned auto endorsement, form GL-71B, p. 1 of 7).

[35] *See Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995.

*act of "using"—i.e., riding in—the vehicle brings the Simmons within the ambit*

*of coverage under the Brotherhood policy.*

In Louisiana, the interpretation of "operating" and "using" in the context of uninsured motorist coverage—when these terms are not defined in the policy—can be understood through judicial interpretations which have elaborated on these concepts.[36] The term "using" has been interpreted broadly by Louisiana courts to encompass various activities related to the inherent purpose of the vehicle, not limited solely to the operation of the vehicle.[37] According to the Louisiana Supreme Court in *Bernard v. Ellis*, "use" of a vehicle is distinguished from "operation" in that "use" denotes the purpose for which the automobile was employed while "operation" refers to its actual physical operation or manipulation of controls.[38] Riding as a passenger in a vehicle has been considered a "use" of the vehicle because it relates to the vehicle's inherent purpose of transportation.[39]

Therefore, Dawn's act of "using"—i.e., riding in—the vehicle affords the Simmons coverage under the policy. It is immaterial that Lindy, rather than Dawn, was driving at the time of the crash. In fact, the District Court "agree[d] that the term 'use' in the context of this clause has a different, and perhaps broader meaning

---

[36] *See Bernard*, 111 So.3d 995.
[37] *See Bernard*, 111 So.3d 995.
[38] *Bernard*, 111 So.3d at 1003.
[39] *Bernard*, 111 So.3d 995.

than 'operate,' otherwise the term "use" would be superfluous."[40] The District Court even found that "[t]he record also arguably shows that Lindy provided some benefit to ACS by transporting Christopher to and from an ACS-related athletic event."[41]

However, the District Court held that "even if Dawn *used* the family car as a passenger, this argument fails."[42] The District Court determined that ACS did not "request" the Simmons to provide transportation.[43] Its holding is contrary to the email from ACS "Admin" to "Basketball parents"—offered into evidence by Plaintiffs—***requesting*** family transportation, and which states:

> Good afternoon Basketball parents,
>
> We are organizing rides to the basketball game in Monroe on Dec. 17th. We will not be taking the bus to the game. Please let me know if your child will be riding with you or if they will need a ride. If you are planning on driving, please let me know if you could bring another basketball player.
>
> The JV game starts at 5:30 pm and we would like JV and Varsity to be there by 4:45 pm. We will be leaving around 12:30 pm. The address to the gym is 1700 Oaklawn, Monroe, LA.
>
> If you can drive another student, you will need to bring a copy of your license and insurance and get pre-approved.
>
> Thanks,
> Admin[44]

---

[40] ROA.25-30463.2002 (Ruling).
[41] ROA.25-30463.2000 (Ruling).
[42] ROA.25-30463.2002 (Ruling) (emphasis in original).
[43] ROA.25-30463.2000-2002 (Ruling); ROA.25-30463.307-308 (email).
[44] ROA.25-30463.1998-1999 (Ruling); ROA.25-30463.307-308 (email).

9

The District Court's reasoning was based upon its faulty interpretation of the email by requiring ACS to pre-approve Lindy and/or Dawn prior to transporting Christopher to and from the game. This is evident in its Ruling wherein it stated:

> [W]ith respect to Lindy, the email relied upon by Plaintiffs does not make a general request to all parents to transport ACS basketball students for the benefit of ACS. At most, the request is limited to a request for volunteers to drive players who had no transportation to the game. Moreover, the request required volunteers to provide driver's license and insurance information, and required that they be pre-approved by ACS. As explained above, neither Lindy nor Dawn transported other students to the game, and they were not pre-approved by ACS after providing driver's license and insurance information.[45]

In misinterpreting the email, the District Court cited two additional reasons why Lindy's "operation [or] use" of the Simmons' family car was not at the "request" of ACS: "First, the record does not reflect any request by ACS that Lindy operate or use the Simmons' family vehicle to shuttle ACS basketball players to and from the game in Monroe. The email cited by Plaintiffs is specifically directed to 'Basketball parents,' not siblings or other family members."[46]

The District Court further stated:

> [M]ore importantly, the email does not reflect a broad request to all parents of basketball players to drive players to the game in Monroe; rather, the email inquired as to whether those parents who were travelling with their child to the game could provide transportation to those players who had no ride. The ACS email informed parents that bus services were not going to be available to transport students to Monroe and provided the time that players needed to be in Monroe for

---

[45] ROA.25-30463.2002 (Ruling).
[46] ROA.25-30463.2000 (Ruling).

the game. The email further inquired as to whether any team members needed a ride to the game, and whether any parents could provide transportation to team members who needed transportation. The email states that if a parent is driving "another student," the parent would "need to bring a copy of [his or her] license and insurance *and get pre-approved.*" . . . . Considering the record as a whole, the email does not create a triable issue regarding whether ACS requested that Lindy operate or use a "nonowned vehicle" to transport students for the benefit of ACS. Accordingly, Lindy was not an "authorized operator" and thus not a "covered person" under the Brotherhood Nonowned Vehicle Coverage Endorsement.[47]

The District Court continued:

There is no evidence in the record that Lindy or Dawn agreed to drive any other team member to Monroe, that either provided their driver's license and insurance information to ACS, or that either was "pre-approved" to drive other students. Thus, to the extent the email makes a "request," it was limited to providing transportation to students without a ride to the game. Here, there is no evidence that Lindy volunteered to drive any of the four students who did not have transportation. Considering the record as a whole, the email does not create a triable issue regarding whether ACS requested that Lindy operate or use a "nonowned vehicle" to transport students for the benefit of ACS.[48]

At the outset, Brotherhood—and the District Court—attempts to impermissibly amend the policy by adding requirements not stated within it. In Louisiana, an insurance contract cannot be altered by one party without the other's consent, ensuring adherence to the original terms.[49] Thus, Brotherhood's argument fails on this basis alone.

---

[47] ROA.25-30463.2000-2002 (Ruling) (emphasis in original) (internal footnotes omitted).
[48] ROA.25-30463.2001-2002 (Ruling).
[49] *Fidelity & Cas. Co. of New York v. Callicott*, 88 So.2d 724 (La.App. 5th Cir. 1956).

11

An insurance policy must not be interpreted in a way that unreasonably enlarges or restricts its provisions or leads to absurd conclusions.[50]  Brotherhood's interpretation of "authorized driver" to include only Dawn—excluding Lindy—is unreasonable.  Given the 404-mile round trip between New Iberia and Monroe, it is absurd to suggest only Dawn could be an authorized driver.  This interpretation defies common sense and the reasonable expectations of policyholders, who would expect Lindy to be covered for such a journey.  Therefore, Brotherhood's restrictive interpretation should be rejected.

Moreover, Brotherhood and the District Court misconstrue the email by imposing unnecessary pre-approval procedures.  The email does not require Lindy to notify the school of her driving.[51]  It requests insurance and licensing information _only_ if a parent plans to drive both their own child/basketball player and another basketball player.[52]  Since Dawn did not transport another player, neither she nor Lindy needed to provide such information.  Thus, the District Court's reliance on pre-approval as a basis for summary judgment should be reversed.

---

[50] *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577, 580.

[51] ROA.25-30463.307-308 (email).

[52] ROA.25-30463.307-308 (email) (emphasis added) (The email provides:  "If **you** [basketball parent] are planning on **driving**, please let me know if you could bring another **basketball player**."  Later in the email, it provides:  "If you [basketball parent] can drive **another student**, you [basketball parent] will need to bring a copy of your license and insurance and get pre-approved."  The Simmons submit that "another student" in the latter sentence refers to a "basketball player"— who is obviously another ACS "student"—in light of the subject of the email, i.e., asking basketball parents to provide transportation to and from the ACS basketball game.).

Importantly, contract interpretation should not expand or restrict provisions beyond what the terms reasonably contemplate.[53]   Brotherhood's interpretation, which restricts the policy to only Dawn as an "authorized operator," is unreasonable. Dawn asked Lindy to drive due to her vision issues, although Dawn remained a passenger.[54]   And the only reason why Dawn asked Lindy to drive—and the only reason why Dawn took off of work—was to provide transportation for Christopher ***at the request of ACS***.[55]   As such, Brotherhood's strained interpretation is impermissible.

Indeed, a reasonable jury could determine that the email constitutes a "request" as provided for in the Brotherhood policy.  In fact, the District Court correctly noted, "The endorsement does not define 'request' but the dictionary definition of the term is 'the act of asking for something.'"[56]  However, the District Court subsequently misinterpreted whether the email constituted a request.  This misinterpretation was critical to its Ruling.

Accordingly, a genuine issue of material fact exists regarding whether a request was made, which is for the jury to decide.  The District Court erred in

---

[53] *Sandoz v. Bourgeois*, 10-859 (La.App. 5 Cir. 4/12/11), 64 So.3d 322, *writ denied*, 11-973 (La. 6/17/11), 63 So.3d 1043; *See also Cadwallader*, 848 So.2d 577.
[54] ROA.25-30463.1731 (Affidavit of Dawn Simmons, para. 8).
[55] ROA.25-30463.1730-1731 (Affidavit of Dawn Simmons).
[56] ROA.25-30463.2000 (Ruling, fn. 39).

13

granting summary judgment for Brotherhood, and it should be reversed and remanded for jury determination on whether the email constitutes a request.

## II. In addition to the email, deposition testimony and other evidence confirms a request was made.

The deposition testimony of ACS's principal, Monique Sanchez, supports the Simmons' position that they were asked to drive at the request of ACS. Ms. Sanchez acknowledged the email was sent from one of ACS's administrators on December 14, 2021 to all basketball players' parents—including Christopher Simmons' parents.[57] She explained it was ACS's responsibility to "provide[] transportation to every child that needed it."[58] Ms. Sanchez made the decision <u>not</u> to utilize the bus for transportation to and from the basketball game in Monroe.[59] She agreed that parents transporting their children to and from the game served the same function that the ACS bus would have served had ACS utilized their own bus for the game.[60] Ms. Sanchez testified that the Simmons' vehicle was not owned by ACS nor was it rented or hired by ACS.[61]

Deposition testimony from ACS's athletic director, Chris Judice, confirms Ms. Sanchez's testimony regarding the email sent from ACS administration to the

---

[57] ROA.25-30463.913:7-25 (Monique Sanchez deposition); ROA.25-30463.914:1-25; ROA.25-30463.915:1-25; ROA.25-30463.916:1-25; ROA.25-30463.917:9-23; ROA.25-30463.918:15-25; ROA.25-30463.919:1-13.
[58] ROA.25-30463.921:6-8.
[59] ROA.25-30463.907:15-17; ROA.25-30463.908:21-25; ROA.25-30463.909:1-2.
[60] ROA.25-30463.909:3-24.
[61] ROA.25-30463.937:14-21.

basketball parents.[62]  His testimony further reveals that on the night in question, the bus was in workable, driving condition; the bus was not broken down; and the bus was not in need of repairs.[63]  Mr. Judice was not aware of anyone at the school hiring the Simmons' vehicle to provide transportation.[64]  Mr. Judice agreed the ACS bus was not available for Christopher to travel to and from the basketball game.[65]  Mr. Judice acknowledged that if a basketball player had asked the administration for transportation to and from Monroe, ACS would not have used the school bus.[66]

In addition to their deposition testimony, Brotherhood's response to Plaintiffs' Interrogatories confirms that "school transportation was not utilized for attendance of the basketball game on December 17, 2021 in Monroe. . . . [and that] [t]he school's bus was in working order[] [and that] Chris Judice and Monique Sanchez made the decision not to utilize the school bus for the trip[.][67]

Despite the foregoing evidence and testimony—which the District Court did not consider in the light most favorable to the non-movant, the Simmons—the

---

[62]  ROA.25-30463.806 (deposition of Chris Judice); ROA.25-30463.822:18-25; ROA.25-30463.823:1-25; ROA.25-30463.824:1-25; ROA.25-30463.825:1-12.

[63] ROA.25-30463.842:15-25; ROA.25-30463.843:1-7.

[64] ROA.25-30463.845:7-14.

[65] ROA.25-30463.837:16-25; ROA.25-30463.838:1-2.

[66] ROA.25-30463.846:19-25; . ROA.25-30463.847:1-19.

[67] ROA.25-30463.325 (Brotherhood's Answer to Pl. Interrogatory No. 22).

District Court granted Brotherhood's motion for partial summary judgment.[68]

Accordingly, the District Court's decision should be reversed.

And despite Brotherhood's discovery responses and Mr. Judice's testimony confirming Ms. Sanchez's favorable testimony supporting the Simmons' position that ACS requested them to drive, the District Court based its holding on a snippet of conflicting testimony by Ms. Sanchez. Specifically, the District Court held:

> The summary judgment record includes the deposition of ACS's principal, Monique Sanchez, who testified that school administrators decided not to take ACS's bus to Monroe because all but four members of the basketball team intended to travel to Monroe with their families. She testified that these families made their own, independent decisions to travel separately to the game, which was not at the request of the ACS. The four members of the team without transportation ultimately travelled to Monroe with the team's coach. [[69]]

> The District Court relied upon Ms. Sanchez's following testimony:

> Q: Are you aware whether there's any communication from the coaches to the players telling the players that the parents should drive to the game?

> A: No, sir.

> Q: No one's talked to you about that?

> A: Not telling the parents that we wanted them to drive to the game. For me, it was really the opposite of that.

---

[68] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991) (In resolving motion for summary judgment, the court may not undertake to evaluate credibility of witnesses, weigh evidence, or resolve factual disputes; so long as evidence in record is such that reasonable jury drawing all inferences in favor of nonmoving party could arrive at verdict in that party's favor, court must deny motion.).

[69] ROA.25-30463.2001 (footnotes omitted) (emphasis added).

16

Q: So your understanding is the parents wanted to drive?

A: That is correct.

Q: So you took the bus out of service and let the parents drive. And I'm asking you, has anyone communicated anything to you different from that, that the school communicated to the players that the school wanted parents to drive?

Q: No. The way I was approached was that parents wanted to drive their children. And I wanted to make sure that if a parent could not drive their child there—some people have to work or do other things, maybe they couldn't afford the gas—that the school's responsibility was to make sure that we provided transportation to every child that needed it.[70]

The above constitutes a conflicting statement by a witness, Ms. Sanchez. By relying on Ms. Sanchez's conflicting statement with respect to whether ACS requested the Simmons to provide transportation, the District Court impermissibly resolved a factual dispute—i.e., whether a request was made.[71] As such, this conflicting statement does not provide a sufficient basis to grant summary judgment in favor of Brotherhood. The District Court's ruling granting summary judgment in favor of Brotherhood should be reversed.

---

[70] ROA.25-30463.2001 (Ruling, fn. 42).

[71] *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) ("[T]he district court must not resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence.").

**III.    The District Court impermissibly interpreted the Brotherhood policy's "request" language and ACS communications—such as the text message—which are questions for the jury.**

Additional support showing that ACS asked parents to transport their children is illustrated in a text message from Christopher to his mother, Dawn, on December 10, 2021 wherein he states:  "They want the parents to bring us next Friday mom[.] All the way to Monroe[.]  Or just someone to bring us there and back[.]"[72]  In response, Dawn stated:  "I will take off then[.]"[73]

Dawn even provided an affidavit showing that ACS asked parents to transport their children.[74]  Therein, Dawn explains that "but for the request by [ACS] to provide transportation to the basketball game in Monroe, . . . neither she, Lindy Simmons, Kamryn Simmons or Marissa Darby would have otherwise traveled to the basketball game on December 17th 2021."[75]  Dawn attests that she "took off of work on December 17th, 2021, for the sole purpose of providing transportation for Christopher Simmons, to and from the basketball game as requested by Acadiana Christian School."[76]  Dawn states that whenever she and her 20-year-old daughter—Lindy—traveled together, Lindy typically drove because Dawn felt safer with Lindy as the driver since Lindy had better eyesight than Dawn.[77]  According to Dawn, "the

---

[72] ROA.25-30463.317 (text message).
[73] ROA.25-30463.317 (text message).
[74] ROA.25-30463.1730-1731 (Affidavit of Dawn Simmons).
[75] ROA.25-30463.1731 (Affidavit of Dawn Simmons, para. 6).
[76] ROA.25-30463.1731 (Affidavit of Dawn Simmons, para. 7).
[77] ROA.25-30463.1731 (Affidavit of Dawn Simmons, para. 8).

sole purpose" of traveling to Monroe on December 17, 2021, was to transport her son—Christopher—to and from the basketball game, as requested by ACS.[78]

Despite this text and supporting affidavit, the District Court held:

> This text message however is not sufficiently definite to qualify as a "request," as used in the definition of "authorized driver" in the policy endorsement. This definition requires that the request be made by "**your leader, your** employee, or **your appointed person** …." Even if deemed a request, Chrisopher's text message does not identify who is making the request, the scope of the request, or whether the request is directed at all parents. In that regard, on December 14th, four days *after* Christopher Simmons' text, ACS sent its email regarding transportation to the game. That email did not make a broad request to transport students but, as the Court has noted, was a more limited request for volunteers to transport students who did not otherwise have transportation to the Monroe basketball game. Neither Lindy nor Dawn transported any players without a ride.[[79]]

Notably, the District Court makes no mention of Dawn's affidavit in its Ruling. As such, the District Court erred by failing to consider the affidavit when granting Brotherhood's motion for summary judgment. Additionally, the District Court clearly misconstrued the text message. And most importantly, the District Court impermissibly interpreted the policy's "request" language and ACS communications, which are questions for the jury. Accordingly, the District Court's ruling granting summary judgment in favor of Brotherhood should be reversed.

---

[78] ROA.25-30463.1731 (Affidavit of Dawn Simmons, para. 9).
[79] ROA.25-30463.2003 (Ruling) (internal footnote omitted) (emphasis in original).

## IV. The District Court erred by finding the text message constitutes inadmissible hearsay.

Brotherhood claims, and the District Court agreed, that the text message from Christopher to Dawn is inadmissible because it is not authenticated.[80]   However, according to Fed. R. Evid. 901(b)(1), the testimony of a witness with knowledge can satisfy the requirement to authenticate an item of evidence.   Additionally, affidavits—as forms of sworn statements—can be used to authenticate various types of evidence if deemed credible and authentic by the court.[81]

In response to Brotherhood's argument that the text message is not authenticated, the Simmons offered the affidavit of Dawn Simmons, who attested that she has personal knowledge of the text message.[82]   According to Dawn, she received a text message from her son on December 10, 2021—which was one week before the basketball game.[83]   Dawn reviewed the text message, explained that she received the text message from her son on December 10, 2021, and attested "[t]hat based on the text message from her son, Christopher Simmons and based on her interactions and discussions with him, [Dawn] is certain that the text message meant that the school, Acadiana Christian School, wanted parents to provide transportation to players to and from the basketball game in Monroe, LA. on December 17th

---

[80] ROA.25-30463.2003-2004 (Ruling); ROA.25-30463.1244-1246 (Def. Memo in Support of MPSJ); ROA.25-30463.317 (Text message).
[81] *See Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F.Supp.3d 602, pp. 607-08 (E.D. La. 2015).
[82] ROA.25-30463.1730-1731 (Affidavit of Dawn Simmons).
[83] ROA.25-30463.1730 (Affidavit of Dawn Simmons, para. 1).

2021[.]"[84]  Accordingly, Dawn's affidavit identifying the text message between Christopher and Dawn suffices to authenticate it as such.

Brotherhood further argues—and the District Court agreed—that the text message is inadmissible because it constitutes hearsay within hearsay.[85]  Once again, Brotherhood's argument fails for the following reasons.

Hearsay is a statement that the declarant does not make while testifying at the current trial and a party offers in evidence to prove the truth of the matter asserted in the statement.[86]  Hearsay is not admissible unless it falls within an exception to the hearsay rule.[87]  There are several exceptions to the hearsay rule, including Fed. R. Evid. 803(1) (Present Sense Impression).  Under this exception, a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it, is not excluded by the hearsay rule—regardless of whether the declarant is available as a witness.[88]

In this case, the text message reflects Christopher's statement explaining what he was told by ACS regarding transportation to and from the basketball game.  The text message further shows that it was sent on Friday, December 10, 2021 at 4:14 p.m.[89]  This means Christopher transmitted the text *while or immediately after* he

---

[84] ROA.25-30463.1730-1731 (Affidavit of Dawn Simmons, para. 5).
[85] ROA.25-30463.1244-1246 (Def. Memo in Support of MPSJ); ROA.25-30463.2003 (Ruling).
[86] Fed. R. Evid. 801(c).
[87] Fed. R. Evid. 802.
[88] Fed. R. Evid. 803(1).
[89] ROA.25-30463.1730-1731 (Affidavit of Dawn Simmons); ROA.25-30463.317 (Text message).

21

was informed by ACS regarding transportation. Thus, the text message is excepted from the hearsay rule under Fed. R. Evid. 803(1), i.e., present sense impression.

In its decision not to apply the present sense impression exception, the District Court stated, "The record does not reflect whether Christopher relayed the statement reflected in his text 'while or immediately after' he heard the statement."[90] However, this timing is clarified by the deposition testimony of Chris Judice, which is part of the record.

Mr. Judice confirmed a meeting with the basketball players and Coach Landry occurred before Tuesday, December 14, 2021—the date an email was sent to parents about transportation.[91] Importantly, during this meeting, they discussed parental transportation for the upcoming game in Monroe.[92] Mr. Judice also noted that the basketball team had "practice every day" unless there was a game, which typically occurred on "Tuesdays", "Fridays", or perhaps on "Monday[s]".[93]

When Christopher texted his mother on Friday, December 10, at 4:14 p.m., it was significant because—according to Mr. Judice's testimony—Christopher was either at practice or a game. Therefore, it is plausible that the meeting took place on

---

[90] ROA.25-30463.2004 (Ruling).

[91] ROA.25-30463.317 (Text message); ROA.25-30463.824:20-25 (Judice testimony); ROA.25-30463.825:1-25; ROA.25-30463.826:1-25; ROA.25-30463.827:1-25; ROA.25-30463.828:1-25; ROA.25-30463.829:1-25; ROA.25-30463.830:1-25.

[92] ROA.25-30463.824:20-25 (Mr. Judice testimony); ROA.25-30463.825:1-25; ROA.25-30463.826:1-25; ROA.25-30463.827:1-25; ROA.25-30463.828:1-25; ROA.25-30463.829:1-25; ROA.25-30463.830:1-25.

[93] ROA.25-30463.827:23-24 (Judice testimony); ROA.25-30463.828:6-13.

Friday, December 10, 2021, meaning Christopher relayed the statement to Dawn "while or immediately after" hearing it.

This remains valid despite Mr. Judice's uncertainty about whether the discussion with players occurred before Monday, December 13, 2021:

> Q.    Do you think it would have been before that Monday that the discussion took place with the players?
>
> A.    From my end, I would think no, ***but I cannot say definitive, like, that Coach Landry did something, or if I may have said something either***.[94]

Based on his testimony, Mr. Judice was not certain the meeting occurred on Monday. Thus, the meeting could have taken place on the previous Friday, December 10, 2021, the date of Christopher's text message.

In summary, Mr. Judice's testimony suggests the meeting discussing transportation happened before December 14, 2021—possibly on December 10, 2021—when Christopher texted Dawn. This timing supports application of the present sense impression, as the message was likely sent "while or immediately after" the meeting and/or game. Despite Mr. Judice's uncertainty about the exact date, his testimony indicates the meeting could have been on December 10, aligning with the text's timing. Therefore, the District Court's decision was incorrect and should be reversed.

---

94 ROA.25-30463.828:22-25 (Judice testimony) (emphasis added); ROA.25-30463.829:1-3.

Even if the present sense impression exception does not apply—which the Simmons contest—the text message is admissible under Fed. R. Evid. 807, the residual exception. This exception serves as a catchall for statements that, while not fitting a specific hearsay exception, possess equivalent guarantees of trustworthiness.[95]  A court evaluates six factors to determine this: (1) the unavailability of the declarant; (2) the circumstantial guarantees of trustworthiness surrounding the statement; (3) whether the statement relates to a material fact; (4) whether the statement is the most probative evidence on the point; (5) whether the interest of justice is served by the statement's admittance; and (6) whether the opposing party has been given reasonable notice that the statement is being sought for admittance.[96]

Here, the first and sixth factors are satisfied: Christopher Simmons is deceased, and Brotherhood was notified through the cross-motions for partial summary judgment. The fourth factor is also met, as the text message is crucial in establishing whether a request was made.

---

[95] *See U.S. v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998); Stephen E. Arthur & Robert S. Hunter III, *Federal Trial Handbook: Civil* § 58:40 (Thomson Reuters, 2025-2026 ed., Sept. 2025 update), available on Westlaw (The contents of former Fed. R. Evid. 803(24) and Fed. R. Evid. 804(b)(5), which form the basis for the "residual" exception to the hearsay rule, were transferred to current Fed. R. Evid. 807.).

[96] *See U.S. v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995); *See also Nowell v. Universal Electric Co.*, 792 F.2d 1310 (5th Cir. 1986).

Regarding the second factor, trustworthiness focuses on the circumstances surrounding the statement and any corroborating evidence.[97]  A statement is deemed trustworthy if the declarant was likely truthful when making it.[98]  In this case, the email from ACS to parents, supported by Mr. Judice and Ms. Sanchez's testimony and Dawn Simmons' affidavit, indicates Christopher was likely truthful when he texted Dawn.  Thus, the second factor is satisfied.

The third factor is demonstrated in *Nowell v. Universal Electric Co.*, where the Fifth Circuit upheld the residual hearsay exception for a decedent's statement about an explosive drum's origin.[99]  The statement was material, addressing the drum's identity in the accident.[100]  Similarly, Christopher's text about ACS's request is material, addressing whether ACS asked parents for transportation.  Therefore, the text satisfies the third factor.

Most importantly, however, is that the text message—which is admissible as explained above—completely contradicts Brotherhood's entire argument that the

---

[97] *Basil v. Dow Chemical Co.*, 2020 WL 1964155, p. 4 (M.D. La. 2020) (unreported case) (quoting Fed. R. Evid. 807, Advisory Committee Notes, 2019 Amendments).

[98] *United States v. Washington*, 106 F.3d 983, 1001-02 (D.C. Cir. 1997) (citing *U.S. v. Tome*, 61 F.3d 1446 (10th Cir. 1995), 61 F.3d 1446).

[99] In *Nowell v. Universal Electric Co.*, 792 F.2d 1310 (5th Cir. 1986), the residual provision was codified as Fed. R. Evid. 803(24).  However, the contents of former Fed. R. Evid. 803(24) and Fed. R. Evid. 804(b)(5), which form the basis for the "residual" exception to the hearsay rule, were transferred to current Fed. R. Evid. 807; Stephen E. Arthur & Robert S. Hunter III, *Federal Trial Handbook: Civil* § 58:40 (Thomson Reuters, 2025-2026 ed., Sept. 2025 update), available on Westlaw.

[100] *Nowell*, 792 F.2d 1310.

Simmons are not an authorized operator because Lindy, rather than Dawn, was driving or operating the car. Specifically, the first two sentences of the text message reveal that ACS wanted "parents" to bring basketball players to Monroe.[101] However, the third sentence states, "Or just someone to bring us there and back."[102] This third sentence clarifies the first two sentences and means that if a parent—i.e., Dawn—cannot drive, then "someone" else—i.e., Lindy—was authorized by ACS to bring Christopher to and from the game. Therefore, Brotherhood's entire argument fails on this basis alone.

Accordingly, for the reasons stated above, the District Court's grant of summary judgment in favor of Brotherhood should be reversed.

## CONCLUSION

The District Court's finding that the email does not constitute a "request" is a factual question for the jury, warranting reversal. The ruling stems from its misinterpretation of the email, which was directed to parents and required pre-approval only for those driving another basketball player. Since the Simmons did not transport another player, pre-approval was unnecessary. Deposition testimony

---

[101] ROA.25-30463.317 (Text message) (emphasis added) (The first sentence states: "They want the *parents* to bring us next Friday mom[.]" The second sentence states: "All the way to Monroe[.]").

[102] ROA.25-30463.317 (Text message) (emphasis added) (The third sentence states: "*Or just someone* to bring us there and back[.]").

confirms ACS requested parental transportation, yet the District Court relied on conflicting testimony, improperly resolving a factual dispute. The hearsay ruling on the text message was also incorrect, as it should be admissible under the present sense impression or residual exception. Therefore, Brotherhood's summary judgment should be reversed.

If reversed, and in the alternative, the Simmons request their motion for partial summary judgment on insurance coverage be granted.[103]

SUBMITTED BY:

Respectfully Submitted,

**LABORDE EARLES LAW FIRM, LLC**

*/s/ David Charles Laborde*
**DAVID C. LABORDE (Bar #20907)**
*Email: service@onmyside.com*
**DERRICK G. EARLES (Bar #29570)**
**MARY K. CRYAR (Bar #24062)**
1901 Kaliste Saloom Road
Lafayette, Louisiana 70508
Phone (337) 261-2617
Fax (337) 261-1934
***Attorneys for Plaintiffs-Appellants***

---

[103] ROA.25-30463.274-1035.

27

# CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on October 13, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.


*/s/ David Charles Laborde*
David C. Laborde

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1:  this document contains 6,495 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 with a 14-point font named Times New Roman.

*/s/ David Charles Laborde*
David C. Laborde

29